WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
Tel. (212) 510-0531
By:     Susan Arbeit, Esq.
        Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                        :
In re                                                   :       Chapter 11
                                                        :
CORPORATE RESOURCE SERVICES, Inc., *et al.*,            :       Case No. 15-12329 (MG)
                                                        :
                        Debtors.                        :
                                                        :
-----------------------------------------------------------------------X

**MOTION OF THE UNITED STATES TRUSTEE FOR
THE ENTRY OF AN ORDER DIRECTING THE
<u>APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      PRELIMINARY STATEMENT ........................................................................................1

II.     FACTUAL BACKGROUND .............................................................................................2
        A.    General Background ...............................................................................................2
        B.    The Debtors' Business Operations ..........................................................................3
        C.    Resignation of CRS' Audit Committee ...................................................................4
        D.    Cassera's Ownership Interests in the Debtors, TSE, and the Tri-State Entities .....5
        E.    The Debtors', TSE's, and Tri-State Entities' Common Directors and Officers ......6
        F.    The Relationship Between the Debtors, TSE, and the Tri-State Entities ...............7
        G.    The Debtors, TSE, and the Tri-State Entities Were
              Located in the Same Building and Shared Services…………………………........7
        H.    TSE's Tax Obligations…………………………………………………………....7

III.    DISCUSSION .....................................................................................................................8
        A.    The Appointment of a Trustee is Required Upon a Finding
              of Cause, or Where It Is in the Best Interest of Creditors .......................................8
        B.    Cause Exists to Appoint a Chapter 11 Trustee Pursuant to
              Section 1104(a)(1) ...................................................................................................9
              1.     The Debtors' Management Has Engaged in Gross
                     Mismanagement ..........................................................................................10
              2.     The Debtor's Management is Conflicted From Pursuing
                     Any Claims Against Themselves, the Tri-State Entities,
                     and TSE under 11 U.S.C. § 1104(a)(1)…………………….……………..12
              3.     The Appointment of a Chief Restructuring Officer Does Not
                     Obviate the Need for a Chapter 11 Trustee ................................................12
        C.    The Appointment of a Chapter 11 Trustee is in the Best Interests of
              Creditors Pursuant to Section 1104(a)(2)…………………………………….…13

IV.     CONCLUSION .................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

In re Adelphia Communication Corp., 336 B.R. 610 (Bankr. S.D.N.Y. 2006)..............................14

In re Altman, 230 B.R. 6 (Bankr. D. Conn. 1999)........................................................................10

In re Ashley River Consulting, LLC, 2015 WL 1540941, *10………………………………10, 12

Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985).................................10

In re Euro-American Lodging Corp., 365 B.R. 421 (Bankr. S.D.N.Y. 2007)…………………...14

In re Ionosphere Clubs, Inc., 113 B.R. 164 (Bankr. S.D.N.Y. 1990)……………………………13

In re Microwave Products of America, Inc., 102 B.R. 666……………………………………...13

Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.),
    838 F.2d 1133 (10th Cir. 1988) ......................................................................................9,10

In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989)................................................................13

In re Soundview Elite, Ltd., 503 B.R. 571……………………………………………………….10

In re Taub, 427 B.R. 208 (Bankr. E.D.N.Y. 2010) .......................................................................14

In re The 1031 Tax Group, LLC, 374 B.R. 78...............................................................................9

**Statutes**

11 U.S.C. § 1104(a)……………………………………………………………………… 8, 9

11 U.S.C. § 1104(a)(1)…………………………………………………………………… 9, 10, 12, 13

11 U.S.C. § 1104(a)(2)……………………………………………………………………9, 13, 14

11 U.S.C. § 1104(e)……………………………………………………………………….9

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

      William K. Harrington, the United States Trustee for Region 2, hereby files this Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104(a)(1) and (a)(2) for Corporate Resource Services, Inc. ("CRS") and its affiliated entities (together with CRS, the "Debtors").[1] The United States Trustee asserts that "cause" exists for the appointment of a Chapter 11 trustee and/or that the appointment is in the best interests of creditors and other interests of the estate. In support of the Motion, the United States Trustee respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

      The United States Trustee moves for the appointment of a Chapter 11 trustee pursuant to Sections 1104(a)(1) and (2) of the Bankruptcy Code. Appointment of a Chapter 11 trustee is appropriate either for cause or in the best interest of creditors. As discussed below, at the very least, these Debtors have been grossly mismanaged. Even assuming that James Feltman as Chapter 11 trustee of TS Employment, Inc. ("TSE")'s allegations concerning tax fraud are not ultimately imposed against the current management of the Debtors, the Debtors' management failed to properly exercise proper financial review and control over significant tax issues germane to the very business being run by the Debtors. As such, these failures have left the Debtors potentially open to a $100 million withholding tax liability.

      Further, as a result of the discovery of these tax issues and the subsequent decision by the Debtors that it would not fund an independent investigation into the facts and circumstances of the tax matters, several Board Members resigned and ultimately, CRS was delisted from NASDAQ. Finally, because the controlling owner of these Debtors, including CRS, is also the

---

[1] On August 20, 2015, the Debtors' Board of Directors approved the United States Trustee's request to consent to the appointment of a Chapter 11 trustee.

1

owner of the affiliated or related company which failed to remit the withholding taxes to the IRS, the Debtors are conflicted from undertaking an independent review of the facts leading to the withholding tax liability and other issues.

For these very reasons, it is also in the best interest of the creditors – who are primarily the taxing authorities -- for an independent fiduciary to be appointed to review these matters, conduct investigations, and to operate the Debtors for as long as required. The Bankruptcy Code provides that under these circumstances, the Court should direct the appointment of a Chapter 11 trustee, pursuant to 11 U.S.C. 1104(a)(1) and (2).

## II. FACTUAL BACKGROUND

**A.     General Background**

1. On February 2, 2015, TSE commenced a voluntary case under Chapter 11 of the Bankruptcy Code. Case No. 15-10243, ECF Doc. No. 1.

2. On February 12, 2015, the United States Trustee filed a Motion For the Entry of an Order Directing the Appointment of a Chapter 11 Trustee. Id. at ECF Doc. No. 21.

3. On February 20, 2015, this Court entered an Order Directing the Appointment of a Chapter 11 Trustee. Id. at ECF Doc. No. 31.

4. On February 27, 2015, after consultation with the parties in interest, the United States Trustee filed a Notice of the Appointment of James S. Feltman as Chapter 11 trustee ("Feltman" or "TSE's Trustee"). Id. at ECF Doc. No. 33.

5. On July 23, 2015, the Debtors hired J. Scott Victor ("Victor") as their chief restructuring officer. ECF Doc No. 1.

6. On that same day, the Debtors commenced voluntary cases (the "Petitions") in Delaware under Chapter 11 of the Bankruptcy Code. Id.

2

7. On July 27, 2015, TSE's Trustee filed an Application to Transfer Venue of the Debtors' Cases to the Southern District. Case No. 15-10243, ECF Doc. No. 127.

8. On August 10, 2015, the United States Trustee for Region 3 held an organizational meeting to form an official committee of unsecured creditors in the Debtors' Delaware cases. No committee was appointed.

9. On August 18, 2015, this Court issued a Memorandum Opinion and Order ("Memorandum Opinion") granting the TSE's Trustee's Application to Transfer Venue of the Debtors' Cases. Id. at ECF Doc. No. 146.

10. On August 20, 2015, the Debtors' Board of Directors approved the United States Trustee's request to consent to the appointment of a Chapter 11 trustee.

**B.    The Debtors' Business Operations**

11. The Debtors' were a diversified technology staffing, recruiting, and consulting firm that provided employment and human resource solutions for corporations. See Declaration of Susan A. Arbeit in Support of the United States Motion for Entry of an Order Directing the Appointment of a Chapter 11 Trustee ("Arbeit Declaration"), Exhibit 1 at 1.

12. TSE was a professional employer organization that provided pay-roll services to CRS. Case No. 15-10243, ECF Doc. No. 2 at ¶ 4.

13. CRS, one of the Debtors, was a publicly-traded company on the NASDAQ stock exchange. Id.

14. Beginning in February 2015, the Debtors engaged in a wind down of operations. ECF Doc. No. 9 at ¶ 7. The Debtors have reduced their staff significantly and currently have approximately five full-time employees, a reduction from approximately 30,000 employees. Id.; Arbeit Declaration, Exhibit 2 at 31, lines 23-24.

3

15. On March 20, 2015, CRS was delisted from the NASDAQ stock exchange.

**C.    Resignation of CRS' Audit Committee**

16. On February 5, 2015, CRS filed a Form 8-K pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 ("8K"). See Arbeit Declaration, Exhibit 3.

17. In the 8K, CRS disclosed that Thomas Clarke, Sylvan Holzer, and Larry Melby, the members of its Audit Committee (the "Audit Committee"), who were also members of the Board of Directors, submitted their resignation as members of the Board of Directors and Audit Committee effective February 5, 2015. See Arbeit Declaration, Exhibit 3 at 2.

18. In each of the Audit Committee member's resignation letters, it was indicated that the Audit Committee had learned of TSE's unpaid federal payroll tax liability on January 29, 2015 and immediately notified management that it had engaged independent counsel to commence an independent investigation. See Arbeit Declaration, Exhibit 3 at 4.

19. This investigation, however, never took place. In the Audit Committee member's resignation letters, it was explained:

> … we were advised by Wells Fargo, which has sole control of [CRS]'s financing, that it expressly and unequivocally refuses to provide any funding for the Audit Committee's investigation or to allow any [CRS] funds at all to be used for an investigation. Further, management has advised the Audit Committee that there is no other funding whatsoever available for such investigation. This leaves the Audit Committee paralyzed from taking action, in direct contravention of the well establish [*sic*] legal and policy imperatives applicable to it, including under The Dodd Frank Act, its fiduciary duties to stockholder, and other standards that demand audit committees be assured access to proper advisors and financing to execute their responsibilities.
>
> The foregoing concerns are exacerbated not only by the apparent malfeasance that requires immediate remediation for the benefit of our stockholders, but also by the obvious related party transactions between TSE and [CRS]. We believe the circumstances clearly call for complete independence in immediate investigations. We are additionally concerned that [CRS]'s inexplicable delay in issuing and enforcing a document hold may jeopardize any investigation and invoke the possibility of criminal liability if relevant documents are destroyed.

4

> Nonetheless, all the members of the Audit Committee have been effectively obstructed by the positions of [CRS] and Wells Fargo.

Id. at 4.

### D. Cassera's Ownership Interests in the Debtors, TSE, and the Tri-State Entities

20. Robert Cassera ("Cassera") owns 89.7% of the outstanding common stock of CRS. See Arbeit Declaration, Exhibit 1 at 7.

21. CRS owns 100% of each of the remaining Debtors. Id.

22. Upon information and belief, TSE is wholly-owned by Cassera.

23. Cassera also has an interest in and/or controls a group of affiliated entities of the Debtors called the Tri-State entities. See Arbeit Declaration, Exhibit 1 at 7.

24. The entities include Tri-State Employment Service Inc.; Carusso Staffing Corp.; Tri-State Entertainment Production PEO, Inc.; TSE-PEO, Inc.; Justin & Brooks, Inc.; Tri-State CRM, Inc.; Tri-State Staffing, Inc.; Tri-State Solutions, Inc.; Todays PEO Inc.; TSEFL, Inc.; Tri-Overload Staffing Inc.; D & D Staffing of New York, Corp.; Tri-Odyssey PEO Inc.; Solutions H2 Corp.; Tri-State Employment Services Inc.;TS Staffing Corp.; Tri-State Personet Corp.; Tri-Diamond Staffing Inc.; A Temporary Staffing Inc.; STS Group, Inc. See Arbeit Declaration, Exhibit 4.

25. According to documents filed by CRS with the SEC, CRS acknowledges that it has a conflict of interest with Cassera and his Tri-State entities:

> [B]ecause Mr. Cassera and his affiliated companies have the ability to exercise significant control over our financing decisions, there can be no assurance that we would enforce any rights and claims that we have or may have against these parties relating to the transactions.
>
> . . .
>
> The interests of Mr. Cassera and Tri-State could conflict with out interests and the interests of our other shareholders.

5

> . . .
>
> As a result of such ownership, Mr. Cassera has the ability to cause the election of all of the members of the Board, appoint new management and approve actions requiring the approval of our shareholders, including amending our certificate of incorporation and merging us with or into another entity or selling all or substantially all of our assets.

See Arbeit Declaration, Exhibit 1 at 7.

26. Due to its status as a "controlled company," CRS was not required to comply with NASDAQ corporate governance standards:

> Tri-State and its affiliated persons control a majority of our common stock. As a result, we are a "controlled company" within the meaning of the NASDAQ corporate governance standards. Under the NASDAQ Marketplace rules, a company of which more than 50% of the voting power is held by an individual, group or another company is a "controlled company" and have elected not to comply with certain corporate governance requirements, including: the requirement that a majority of the Board consists of independent directors; the requirement that we have a nominating and corporate governance committee that is composed entirely of independent directors; and the requirement that we have a compensation committee that is composed entirely of independent directors.

Id.

**E.    The Debtors', TSE's, and Tri-State Entities' Common Directors and Officers**

27. John Messina is an officer and director of CRS and is or was an officer and/or director of at least twelve of the Tri-State entities. See ECF Doc. No. 1 at 7; Arbeit Declaration, Exhibit 4 at 1, 3, 5, 11, 13, 15, 23, 27, 35, 37, 39, and 47.

28. Joseph Cassera[2] is a director of CRS and is or was an officer and/or director of at least one of the Tri-State entities. See ECF Doc. No. 1 at 7; Arbeit Declaration, Exhibit 4 at 3.

29. James Foley is a director of CRS and is or was an officer and/or director of at least one of the Tri-State entities. See id.

30. Yolanda Trippiedi was or is an officer or director of TSE and is or was an officer and/or director of at least fourteen of the Tri-State entities. See Arbeit Declaration, Exhibit 5 at 1,

---

[2] Upon information and believe, Joseph Cassera is Cassera's brother.

3, 5, 11, 15, 20, 23, 25, 27, 29, 35, 37, 39, and 47.

**F.     The Relationship Between the Debtors, TSE, and the Tri-State Entities**

31.     TSE and the Tri-State entities provided services to CRS for which CRS paid administrative fees. See Arbeit Declaration, Exhibit 1 at 17.

32.     At least one of the Tri-State entities – Tri-State Employment Services, Inc.- engaged in business directly with the TSE. See Case No. 15-10243, a balance sheet dated December 31, 2014 (the "Balance Sheet"), ECF Doc. No. 2-2.

33.     According to TSE's Balance Sheet filed at the commencement of its case, Tri-State Employment Services, Inc. is owed $1.22 million although the basis of this liability is not stated on the Balance Sheet. See id.

**G.     The Debtors, TSE, and the Tri-State Entities Were Located in the Same Building and Shared Services**

34.     The Debtors' principal office was, and continues to be, located at 160 Broadway, 13th Floor, New York, New York. ECF Doc. No. 1

35.     TSE's principal place of business was located in the same building, but on the 15th Floor. See Case No. 15-10243, ECF Doc. No. 2. at ¶4.

36.     The Tri-State entities also operate or did operate out of the same building in Florida. See Arbeit Declaration, Exhibit 4.

37.     TSE and the Debtors shared the same employees. See Arbeit Declaration, Exhibit 2 at 43, lines 8-9.

**H.     TSE's Tax Obligations**

38.     TSE owes withholding tax obligations to the Internal Revenue Service (the "IRS") and to at least 19 state tax departments or bureaus. See Case No. 15-10243, List of Creditors Holding 20 Largest Unsecured Claims (the "Top 20 List"), ECF Doc. No. 2-1.

7

39. The tax obligations arose from TSE's failure to withhold payroll taxes from the 4th quarter of 2013 and the 4th quarter of 2014.  Id., ECF Doc. No. 3 at ¶ 8.

40. Neither TSE nor the Debtors have provided an explanation for TSE's failure to withhold the payroll taxes.

41. The debts owed to the IRS may be as high as $100 million.  Id., ECF Doc. No. 2. at ¶ 5.

42. The debts owed to the states listed on TSE's Top 20 List aggregate $868,487.12.  Id., ECF Doc. No. 2.

43. CRS, as the employer of individuals whose withholding taxes were not paid, may be responsible for the tax liabilities.  Id., ECF Doc. No. 142 at 2.

44. Upon information and belief, Cassera and other officers and directors of the Debtor may be personally liable for the unpaid withholding taxes to the IRS.[3]

### III.  DISCUSSION

**A.   The Appointment of a Trustee is Required Upon a Finding of Cause, or Where It Is in the Best Interest of Creditors**

Section 1104(a) of the Bankruptcy Code sets forth two separate standards for the court's determination of the necessity of appointing a Chapter 11 trustee. Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross

---

[3] Section 6672(a) of the Internal Revenue Code provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax on the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

8

mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1), (a)(2). Moreover, section 1104(e) of the Bankruptcy Code provides in pertinent part:

> [T]he United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty or criminal conduct in the management of the debtor.

11 U.S.C. § 1104(e).[4] The United States Trustee "must seek an order requiring appointment of a chapter 11 trustee whenever the 'reasonable grounds to suspect' standard is met." In re The 1031 Tax Group, LLC, 374 B.R. 78, 87 (Bankr. S.D.N.Y. 2007) (quoting Section 1104(e)). The "statutory requirement that the U.S. Trustee bring such a motion [under Section 1104(e)] does not alter the standard for deciding whether to grant the motion. Rather, § 1104(a)(1) & (2), and the cases interpreting these subsections, continue to control whether a trustee should be appointed." Id. at 87.

Here, the appointment of a Chapter 11 trustee is appropriate under either subsection of Section 1104(a).

**B.    Cause Exists to Appoint a Chapter 11 Trustee Pursuant to Section 1104(a)(1)**

A finding of "cause" under Section 1104(a)(1) mandates the appointment of a trustee. Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.), 838 F.2d 1133, 1136 (10th Cir.

---

[4] In its Memorandum Opinion, the Court found that a "major fraud" had been perpetrated, although responsibility for the fraud "remains to be established." Memorandum Opinion at 5.

9

1988). The list of circumstances constituting "cause" for the appointment of a trustee is non-exclusive. In re Altman, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), aff'd in part, vacated in part, 254 B.R. 509 (D. Conn. 2000). Factors that courts consider under Section 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence. Altman, 230 B.R. at 16. The "court need not find any of the enumerated wrongs to find cause for appointing a trustee." Oklahoma Refining, 838 F.2d at 1136. Instead, a court is given "wide latitude" to determine whether the challenged conduct rises to the level of "cause." In re Ashley River Consulting, LLC, 2015 WL 1540941, *10 (Bankr. S.D.N.Y. 2015). In addition, matters of concern that raise suspicions that a debtor's management has acted fraudulently and that necessitate an investigation can be deemed sufficient cause to appoint a trustee. In re: Soundview Elite, Ltd., 503 B.R. 571, 581-82 (Bankr. S.D.N.Y. 2014).

Through Section 1104(a)(1), Congress has mandated that a Chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'").

### 1. The Debtors' Management Has Engaged in Gross Mismanagement

There is cause to appoint a Chapter 11 trustee, pursuant to Section 1104(a)(1). In addition to serious questions regarding the actual relationship between CRS and TSE[5] -- entities both

---

[5] TSE's Trustee reported that based on his investigation to date, the corporate forms of TSE, Tri-State, and the Debtors were all "artificial distractions" meant to obfuscate the tax fraud. See Arbeit Declaration, Exhibit 2 at 10, lines 20-23. TSE's Trustee's counsel at the August 18, 2015 hearing explained:

10

owned and controlled by Cassera -- and what this Court found to be a "major fraud" regarding the failure to pay over $100 million of withholding taxes, see Memorandum Opinion at 5, there is abundant evidence to strongly suggest that the Debtors -- at the very least -- have been grossly mismanaged. To begin with, the IRS has asserted a claim of over $100 million against TSE for its failure to pay withholding taxes for the fourth quarter of 2013 and the fourth quarter of 2014. See Case No. 15-10243, ECF Doc. No. 3 at 8. CRS has not provided an explanation for TSE's failure to remit those withholding taxes to the IRS, but as the employer of the individuals whose withholding taxes were not paid, CRS may be found responsible for those tax liabilities. See Statement Joining in Application to Transfer Venue of the Chapter 11 Cases of CRS and its Affiliated Entities (the "IRS Joinder"), Case No. 15-10243, ECF Doc. No. 142 at 2. Even if CRS is ultimately not found to have engaged in fraud with respect to the failure to remit those withholding taxes, the failure of its management to discover, let alone address, that withholding issue in view of the magnitude of the tax deficiency that leaves the Debtors potentially open to a huge tax liability, on its face strongly suggests gross mismanagement.

Second, due to the Debtors' mismanagement, CRS, which was formerly listed on the NASDAQ stock exchange, has been delisted and members of CRS' Audit Committee and Board of Directors have resigned. According to SEC filings dated February 5, 2015, members of CRS' Audit Committee who were also CRS Board of Director members (the "Members") resigned from both positions when they discovered the unpaid federal tax liability of TSE and learned that CRS would not finance an independent investigation into the circumstances. In their public filings, these Members stated that the:

---

> CRS, [was] the public face, making sales to provide customer service. . . TSE, was the administrative and back office operations of the same business enterprise, and the cash flowed and was managed by Tri-State.

Id. at lines 16-19.

11

> obvious related party transactions between TSE and [CRS] . . . clearly call for complete independence . . . We are additionally concerned that [CRS]'s inexplicable delay in issuing and enforcing a document hold may jeopardize any investigation and invoke the possibility of criminal liability if relevant documents are destroyed.

See Arbeit Declaration, Exhibit 2 at 4. Soon after this information was filed with the SEC, CRS was delisted. Clearly, the Debtors have been grossly mismanaged, and for these reasons alone, there is ample "cause" to appoint a Chapter 11 trustee under 11 U.S.C. §1104(a)(1).

### 2. The Debtors' Management is Conflicted from Pursuing Any Claims Against Themselves, the Tri-State Entities, and TSE under 11 U.S.C. §1104(a)(1)

Appointment of a Chapter 11 trustee is also appropriate under 11 U.S.C. §1104(a)(1) when conflicts of interest exist such that the debtors' current management cannot maintain their fiduciary obligations. See Ashley River Consulting, 2015 WL 1540941, *9. Based on information and belief, it will be necessary for the Debtors to review and analyze transactions undertaken by TSE as well as the Tri-State entities. However, according to the Debtors' SEC Annual Report under Section 13 or 15(d) of the Securities Exchange Act of 1934 (dated July 1, 2014 ("Annual Report"), the Debtors and their management would not be in a position to enforce any rights and claims that the Debtors may have against any affiliated entities because Cassera and his affiliated companies have the ability to exercise significant control over the Debtors' board. See Arbeit Declaration, Exhibit 1Annual at 7.

Furthermore, as alluded to above, on information and belief, Cassera – who wholly owns TSE and owns almost 90% of the common stock of CRS and 100% of the remaining CRS Debtors – faces responsible person liability with respect to the approximately $100 million in withholding taxes allegedly owed to TSE. Based on these conflicts of interest, it is not likely that Cassera, who is in a position to exercise significant control over the Debtors, would act against his own self-interest, and as such, it is not likely that CRS' current management – which

12

is owned and controlled by Cassera -- would be able to maintain its fiduciary obligations.

### 3. The Appointment of a Chief Restructuring Officer Does Not Obviate the Need for a Chapter 11 Trustee

The Debtors' appointment of Victor as chief restructuring officer on the very eve of the bankruptcy filing does not absolve or clean the potential taint of current management. While bankruptcy courts may take into account changes in a debtor's management team in determining whether to order the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(1), last-minute management changes designed to fend off a trustee appointment have been found to be unavailing. See In re Microwave Products of America, Inc., 102 B.R. 666 (Bankr. W.D. Tenn. 1989); In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989).

If the governing body and management of a debtor warrants the selection of an independent person to act as the estate fiduciary, that person should be selected pursuant to, and subject to, all requirements of the Bankruptcy Code governing the selection and duties of a chapter 11 trustee, pursuant to 11 U.S.C. §1104(a)(1). The hiring of a chief restructuring officer by persons controlled by and/or related to Cassera or CRS is not a substitute for an independent fiduciary who is selected by the United States Trustee in accordance with Section 1104 of the Bankruptcy Code.

### C. The Appointment of a Chapter 11 Trustee Is in the Best Interests of Creditors Pursuant to Section 1104(a)(2)

Section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. See Sharon Steel, 871 F.2d at 1217, 1226; In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under Section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). See, e.g., Sharon Steel, 871 F.2d at 1226. Courts

13

"eschew rigid absolutes and look to the practical realities and necessities." See In re Taub, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (quoting In re Adelphia Communication Corp., 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)); In re Euro-American Lodging Corp., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).

Here, the largest creditors by far of both TSE and the Debtors are the taxing authorities. In its memorandum supporting the change of venue of CRS, the IRS expressed concern about the close connection and interdependent relationship between the Debtors and TSE.[6] See IRS Joinder at 3. This close relationship is of particular significance here due to the IRS' view that the Debtors, as the employers of individuals whose withholding taxes were not paid by TSE, might ultimately be responsible for the withholding tax liability of over $100 million. See IRS Joinder at 2. Therefore, it is clearly in the interest of these creditors, as well as other creditors of the estate, for the court, pursuant to 11 U.S.C. 1104(a)(2), to direct the appointment of a Chapter 11 trustee, that is, an effective and independent fiduciary, to administrator the Debtors' estates.

---

[6] Examples provided by the IRS were that CRS was TSE's sole source of funding, CRS' employees directed TSE' daily operations and management, TSE never had any employees of its own, shared a principal place of business and computer equipment. IRS Joinder, Case No. 15-10243, ECF Doc. No. 142 at 3; See also Arbeit Declaration, Exhibit 2 at 24, lines 16-23.

## IV. CONCLUSION

WHEREFORE, the United States Trustee requests that the Court enter orders:(i) directing the appointment of a Chapter 11 trustee; and (ii) granting him such other and further legal and equitable relief to which he may be entitled.

Dated: New York, New York
      August 27, 2015

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By: */s/ Susan A. Arbeit*
Susan A. Arbeit
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
Tel. (212) 510-0500