**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | **NOT FOR PUBLICATION** |
| In re: | ) | |
| | ) | Chapter 11 |
| CORPORATE RESOURCES SERVICES, INC. | ) | Case No. 15-12329 (MG) |
| *et al.,* | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO ENFORCE THE**
**SETTLEMENT AGREEMENT**

*A P P E A R A N C E S :*

Leech Tishman Fuscaldo & Lampl, LLC
*Attorneys for Staff Management Solutions, LLC and*
*PeopleScout MSP, LLC*
2215 York Road, Suite 310
Oak Brook, Illinois 60523
By:    Ray Hughes, Esq.

Kurzman Eisenberg Corbin & Lever, LLP
*Attorneys for Noor Staffing Group, LLC, Noor Associates, Inc.*
One North Broadway, 12th Floor
White Plains, New York, 10601
By:    Bruce W. Bieber, Esq.

Togut, Segal & Segal LLP
*Attorneys for James S. Feltman not individually*
*but solely in his Capacity as Chapter 11 Trustee of*
*the Estate of Debtors Corporate Resource Services, Inc. et al.*
One Penn Plaza, Suite 3335
New York, New York 10119
By:    Neil Berger, Esq.

Otterbourg P.C.
*Attorneys for Wells Fargo Bank, N.A.*
230 Park Avenue
New York, New York 10169
By:    Richard Haddad, Esq

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Staff Management Solutions, LLC and PeopleScout MSP, LLC (together, "Staff Management") move to enforce the Settlement Agreement between chapter 11 trustee in these cases, James Feltman ("Trustee"), and Noor Staffing Group, LLC and Noor Associates, Inc., (together, "Noor"), dated June 2, 2017 (the "Settlement Agreement"). Staff Management seeks an order declaring that the Settlement Agreement releases Noor's claims against Staff Management asserted in a separate case filed by Noor against Staff Management pending in the district court in Illinois. ("Staff Management's Motion," ECF Doc. # 965 at 1.) Staff Management is *not* a party to the Settlement, nor is it mentioned by name in the Settlement Agreement.

The Trustee submitted a response to Staff Management's Motion. ("Trustee's Response," ECF Doc. # 977.) Wells Fargo Bank, National Association ("Wells Fargo") is also a party to the Settlement and it too submitted a response to the motion. ("Wells Fargo's Response," ECF Doc. # 978.) Noor filed a Memorandum of Law in Opposition to Staff Management's motion to Enforce the Settlement Agreement ("Noor's Opposition," ECF Doc. # 979) and Staff Management thereafter filed a Reply. ("Staff Management's Reply," ECF Doc. # 986.)

For the following reasons, this Court denies Staff Management's Motion.

## I.    BACKGROUND

### A.    General Background

Staff Management and debtor Corporate Resource Development, Inc. ("CRD") entered into a written Supplier Agreement, effective January 10, 2015. ("CRD Contract," Staff Management's Motion Ex. C; "Nunn Decl.," Staff Management's Motion Ex. D.) Under the

2

CRD Contract, CRD supplied temporary labor to Staff Management clients, and Staff

Management processed and forwarded payments from such clients. (Nunn Decl. ¶ 5.) On

September 29, 2014, CRD gave Staff Management written authorization to make payments to

CRD by electronic transfer to a specific account at Wells Fargo, and Staff Management

thereafter made payments to the Wells Fargo Account. (Nunn Decl. ¶¶ 6–7.) On February 26,

2015, CRD and Noor entered into an Asset Purchase Agreement by which CRD sold its business

to Noor. (Staff Management's Motion, Ex. F ¶ 5.) Staff Management then entered into a new

written Supplier Agreement with Noor, effective March 21, 2015 (the "Noor Contract."). (Nunn

Decl. ¶ 8.) The Noor Contract required Noor to supply temporary labor to Staff Management's

client, in exchange for which Staff Management would process and forward payments from such

client. (*Id.* ¶ 9.) Staff Management sent payments to the Wells Fargo Account from May 11,

2015 to January 27, 2016. (*Id.* ¶ 10.)

### B.    Bankruptcy Proceedings

On July 23, 2015, CRD and its related entities filed voluntary petitions under chapter 11

of the Bankruptcy Code. (Staff Management's Motion ¶ 16.) On March 4, 2016, the Trustee

commenced an adversary proceeding against Noor seeking (i) to recover the assets transferred

from CRD, and (ii) a declaratory judgment that funds held by Wells Fargo were the property of

the estate. ("Noor Adversary Proceeding," Adv. Proc. 16-01037-mg, ECF Doc. # 1 ¶¶ 231–244,

249–262.) In January 2015, the Trustee and Noor entered into the Settlement Agreement. (Staff

Management's Motion ¶ 19.) Staff Management had not appeared as a party in these bankruptcy

cases and, it contends, it was not aware of or involved in the negotiations for the Settlement

Agreement. (Nunn Decl. ¶ 11.)

3

The Settlement Agreement provided, among other things, that Noor released all claims related to the Wells Fargo Account:

> a. [Noor] release[s] any claims to money that [Noor] allege[s] the Trustee has received from Wells Fargo (the "Wells Fargo Amounts"), the amount and ownership of which is subject to a dispute between the Trustee and [Noor], and
>
> b. [Noor] release[s] any claims to the entirety of the CRD-Noor OAP held by Wells Fargo, the ownership of which is disputed, and which Wells Fargo has confirmed is $1,241,806.79 as of April 26, 2017, to the Trustee.
>
> . . . .
>
> e. There will be no reconciliation of the CRD-Noor OAP, the Wells Fargo Amounts, or any other amounts related thereto.
>
> . . . .
>
> 10. [Noor] on behalf of themselves, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge the Trustee, the Debtors, their estates, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, members, associates, partners, subsidiaries, predecessors, successors, employees, attorneys, and agents from any and all of [Noor's] claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise relate to the transactions referenced in the Adversary Proceeding or the Claim or result from any act or omission with respect to the Adversary Proceeding or the Claim to the extent permitted by law.

(Staff Management's Motion ¶ 19) (citing Settlement Agreement §§ 1(a), (b), (e), and 10.)

On June 27, 2017, the Trustee filed a Certificate of No Objection to the motion for the Court to approve the Settlement Agreement. (Staff Management's Motion ¶ 24.) The Court approved the Settlement Agreement on July 14, 2017. ("Order Approving Settlement," Noor Adversary Proceeding, 16-01037-mg, ECF Doc. # 102.)

### C.    Staff Management's Motion

Staff Management argues that the release in the Settlement Agreement applies to any liability Staff Management may have for transferring funds to the Wells Fargo Account. However, the Settlement Agreement does not explicitly state that Staff Management has been released from such liability, and Noor continues to pursue Staff Management for those funds transferred to the Wells Fargo Account. (Staff Management's Motion ¶ 26.) Staff Management seeks an order declaring that the Settlement Agreement also releases Staff Management. (*Id.*)

Staff Management argues that its funds were deposited in the Wells Fargo Account and, therefore, should have been returned to Staff Management so that the funds could be forwarded to Noor. Staff Management alleges that instead Noor used those funds as leverage in its negotiations of the Settlement Agreement. (*Id.* ¶ 27.) Noor further alleges that "much of the funds from the Wells Fargo Account were transferred to the Trustee."[1] (*Id.* ¶ 28.) Staff Management asserts that if it has not been released by the Settlement Agreement, it will pursue the Trustee and/or Wells Fargo. (*Id.* ¶ 29.)

On January 25, 2019, Noor filed a complaint in the U.S. District Court for the Northern District of Illinois seeking to recover the funds that Staff Management sent to the Wells Fargo Account. *Noor Staffing Group, LLC d/b/a J.D. & Tuttle Hospitality Staffing v. Staff Mgmt. Solutions LLC, and PeopleScout MSP, LLC*, Case No. 1:19-cv-00529 ("Illinois Lawsuit"). Staff Management argues that Noor's claims have been released by the Settlement Agreement. On July 15, 2019, Noor filed a motion in the Illinois Lawsuit seeking to transfer the case to the United States District Court for the Southern District of New York ("Transfer Motion"), so that it can be referred to this Court. (Staff Management's Motion ¶ 32.)

---

[1]    Although Staff Management provides several examples of such transfers, Staff Management's Motion does not provide an exact number.

The Illinois Lawsuit's docket shows that the Transfer Motion has been fully briefed, and a hearing was held on the Transfer Motion on August 27, 2019.  (Illinois Lawsuit, ECF Doc. # 35.)  The hearing will be continued on October 22, 2019.  (*Id.*, ECF Doc. # 40.)

Staff Management argues that the Settlement Agreement releases Noor's claims against Staff Management for the funds transferred to the Wells Fargo Account because the Settlement Agreement states that it applies to any of CRD's "associates" and "agents."  (Settlement Agreement ¶ 10.)  Staff Management contends that it falls into those categories because the Statement of Work in the CRD Contract states that Staff Management is the "paying agent" of CRD.  (Staff Management's Motion ¶ 34.)  Staff Management argues that it was also an "associate" of CRD through the CRD Contract.  (*Id.* ¶ 35.)  Staff Management argues, in the alternative, that even if the Settlement Agreement was not clear, it should still be released as it was the intent of the parties for the matter to be resolved.  (*Id.* at 9–13.)

### D.    Trustee's Response to Staff Management's Motion

The Trustee's Response to Staff Management's Motion argues that because no relief is sought from the Debtors' estates, it neither endorses nor objects to Staff Management's Motion.  (Trustee's Response at 2.)  The Trustee's Response notes that Noor asserted an interest in approximately $1.2 million that Wells Fargo collected and held on account of certain CRD account receivables (the "CRD-Noor OAP") or that Wells Fargo already paid to the Trustee.  (Feltman Decl., Noor Adversary Proceeding, 16-01037-mg, ECF Doc. # 98 ¶ 11.)  In the Noor Adversary Proceeding in this Court, the Trustee disputed Noor's interest in the funds in the Wells Fargo account and asserted that the Debtors' estates were entitled to the funds.  (Trustee's Response at 2–3.)  Trustee and Noor could not fully reconcile the funds in the Wells Fargo Account.  (*Id.*)

In the Settlement Agreement, Noor agreed to "release any claims to money that [Noor] allege[d] the Trustee has received from Wells Fargo (the 'Wells Fargo Amounts')" and to "release any claims to the entirety of the CRD-Noor OAP held by Wells Fargo, the ownership of which is disputed." (Settlement Agreement ¶ 1.) Noor agreed to pay certain sums to the Trustee. (*Id.*) The parties agreed that "[t]here will be no reconciliation of the CRD-Noor OPA, the Wells Fargo Amounts, or any amounts related thereto." (*Id.* ¶ 1(v).) Therefore, the Trustee asserts, there can be no reasonable dispute that Noor released its claims to the funds held or paid by Wells Fargo as part of its settlement to resolve the Noor Adversary Proceeding. (Trustee's Response at 3.) However, because there was no reconciliation, the Trustee cannot state whether the monies that Staff Management alleges it paid to Wells Fargo were included in the CRD-Noor OAP or the Wells Fargo Amounts. (*Id.*)

Further, the Trustee responds to Staff Management's assertion that if it does not prevail it will need to pursue recovery of the funds directly from the Trustee and/or Wells Fargo and may seek to unwind the Settlement Agreement. (Staff Management's Motion, ¶¶ 27–29, 40.) The Trustee states that no such relief is available. (Trustee's Response at 3–4.) Even if Staff Management has defenses to Noor's claims in the Illinois Lawsuit, those defenses do not constitute affirmative claims against the Debtors' estates or the Trustee. (*Id.*) Second, the Trustee argues that any claims that Staff Management may seek to assert against the Debtors' estates are barred by the Order Approving Settlement.[2] (*Id.*)

---

[2]    As Staff Management has not filed an adversary proceeding against the Debtors, that issue is not presently before the Court. Nothing in this Opinion resolves that issue.

### E.    Wells Fargo's Response to Staff Management's Motion

Wells Fargo's Response argues that, pursuant to two Court orders, it turned over any funds it held on CRD's behalf to either the Trustee or to Noor, and Wells Fargo was released from any liability related to the turnover of such funds.  ("Wells Fargo Adversary Proceeding," Adv. Proc., 15-01391-mg, ECF Doc. # 21; Wells Fargo's Response at 2.)  Wells Fargo stated that it takes no position whether the release provisions of the Noor Settlement Agreement extend to Noor's claims against Staff Management in the Illinois Lawsuit.  (Wells Fargo's Response at 3.)

In response to Staff Management's assertion, in the alternative, that it may need to pursue a claim against Wells Fargo (*see* Staff Management's Motion, ¶¶ 27–29, 40), Wells Fargo argues that the Settlement Agreement protects it from liability for any claims that may arise from the turnover of the disputed funds to the Trustee.  (Wells Fargo's Response ¶ 3.)  Second, Wells Fargo also argues that the Settlement Agreement provides that Wells Fargo will have no liability to either CRS or any party known to have asserted an interest with respect to the disputed funds that it released.  Third, Wells Fargo argues that a specific provision of the Settlement Agreement addressed the funds which were subject to dispute between Trustee and Noor, providing that Wells Fargo would not be required to release such funds unless Wells Fargo was relieved from all liability with respect to the funds; Wells Fargo agreed to release the disputed funds.  (Wells Fargo's Response ¶ 6.)  Therefore, Wells Fargo contends that Staff Management cannot assert any claims against Wells Fargo, and to the extent it does so, Wells Fargo contends that the Trustee must pay for Wells Fargo's defense.[3]  (*Id*. ¶ 8.)

---

[3]    As Staff Management has not filed a lawsuit against Wells Fargo, that issue is not presently before the Court.  Nothing in this Opinion resolves that issue.

### F.    Noor's Opposition to the Staff Management's Motion

Noor's Opposition argues that the Settlement Agreement does not release its claims against Staff Management for breach of contract.  (Noor's Opposition at 12–13.)  The terms of the Settlement Agreement contain no language releasing Noor's claims against Staff Management.  (*Id.* at 13, 15.)  Noor argues that if Staff Management expected to be released under the Settlement Agreement, it should have participated in the Noor Adversary Proceeding and sought to be included in the Settlement Agreement.  (*Id.* at 13.)  Noor further argues that Staff Management's argument regarding whether it is an "agent" or "associate" of CRD is immaterial, as Noor's claims against Staff Management relate to Staff Management's conduct under Staff Management's CRD Agreement with Noor.  (*Id.* at 15–16.)

In the alternative, Noor argues that even if Staff Management successfully demonstrates that it was an "associate" or "agent" of CRD, its argument still fails since Staff Management provided no evidence of its alleged remittances, or evidence of any obligations that were satisfied by the remittances.  (*Id.* at 16.)

Noor also argues that Staff Management's Motion violates the first-filed rule, asserting that, "[e]ager for better results in New York than it[] anticipates receiving in Illinois, Staff Management seeks to do an end-around the Illinois Action, hoping that this Court will rule, without any proof and/or discovery, that Staff Management is entitled to a full defense of claims raised by Noor in the Illinois Action."  (*Id.*)  Under the first-filed action rule, where there are two competing lawsuits, the first lawsuit should have priority.  (*Id.* at 18) (citing *Emp'rs Ins. of Wausau v. Fox Enter. Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008)).  Noor alleges that Staff Management is seeking relief it has already requested in the Illinois Lawsuit.  (*Id.* at 19.)

Finally, Noor asserts that this is not a core proceeding under 28 U.S.C. § 157.

### G.    Staff Management's Reply

On September 27, 2019, Staff Management replied to Noor's Opposition, Trustee's Response, and Wells Fargo's Response.  (Staff Management's Reply.)  Staff Management's Reply argues, again, that the intent of the Settlement Agreement was clear.  (*Id.* ¶ 1.)  In addition, it argues that CRD was in the process of transferring its work to Noor, and thus Staff Management was an "agent" and/or "associate" of Noor.  (*Id.* ¶ 4.)  Staff Management also asserts that the first-filed rule does not apply as the Noor Adversary Proceeding was filed before the Illinois Lawsuit.  (*Id.* ¶ 6.)  Finally, Staff Management seeks to use the Trustee and Wells Fargo's Responses to support Staff Management's Motion.  (*Id.* ¶¶ 11–12.)

## II.    <u>LEGAL STANDARD</u>

### A.  Standing to Enforce a Settlement Agreement

First, a party seeking to appear in federal court must demonstrate prudential standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988).  In the context of a contract dispute, only parties to the contract and intended third-party beneficiaries have prudential standing to appear and enforce agreements.  *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (holding that a non-party to a contract lacks standing in a contract proceeding to enforce the agreement unless unequivocal terms clearly evidence an intent to permit such standing).  Put differently, a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary of that contract lacks prudential standing to litigate issues related to that contract. *See id*. (explaining that "[a] non-party to a contract governed by New York law lacks standing" in a contract proceeding "in the absence of terms that clearly evidence an intent to permit" such standing) (internal citation omitted); *see also Hillside Metro Assoc., LLC v. JPMorgan Chase*

*Bank, N.A.*, 747 F.3d 44, 48–49 (2d Cir. 2014) (applying the third-party beneficiary theory, and holding that a plaintiff suing for breach of a lease, who is "neither a party nor a third-party beneficiary" of the contract at issue, "does not have prudential standing"); *In re Old Carco LLC,* 500 B.R. 683, 692 (Bankr. S.D.N.Y. 2013) (holding that a non-party to a stipulation lacked prudential standing to assert claims thereunder and noting that "[u]nder general contract rules, a non-party to a contract who is not an intended beneficiary cannot enforce the contract or recover for its breach") (citations omitted); *Shea v. Royal Enters., Inc.*, No. 09-CV-8709 (THK), 2011 WL 43460, at *3 (S.D.N.Y. Jan. 6, 2011) (holding that a non-party lacked standing to assert the "Statute of Frauds" defense and challenge the enforceability of lease agreement).

Similarly, under both federal common law and New York law, third-party non-beneficiaries cannot adjudicate contractual issues even when that third-party's financial interest is arguably at stake. *See Shea*, 2011 WL 43460, at *3; *see also Hillside Metro Assocs.*, 747 F.3d at 50 (holding that a lessor lacked prudential standing to litigate whether liabilities were assigned under a purchase and assumption agreement because the lessor was neither a contracting party nor a third-party beneficiary under the agreement); *Premium Mortg.*, 583 F.3d at 108 (explaining that the plaintiff who was not a party to the contract at issue lacked standing; there was an "absence of terms that clearly evidence[ ] an intent to permit enforcement" by the plaintiff) (internal citation omitted); *Cty. of Tioga v. Solid Waste Indus. Inc.*, 577 N.Y.S.2d 922 (App. Div. 3d Dep't 1991) (holding that a judgment creditor lacked standing to assert the affirmative defense of lack of consideration because it was a "stranger" to the underlying contract, and the affirmative defense was personal to the parties to the contract).

Importantly, a showing that the party was an "incidental beneficiary" of a contract is insufficient, even if the party stands to suffer "economic loss." *See Cty. of Suffolk v. Long Island*

*Lighting Co.*, 728 F.2d 52, 62–63 (2d Cir. 1984) (holding that a non-party claiming that a product did not function properly, requiring the owner to incur costs of repair—the only injury claimed thus being one for economic loss—was not considered sufficiently severe to warrant the abrogation of the privity requirement for standing); *Tamir v. Bank of N.Y. Mellon*, No. 12-CV-4780(DLI)(JO), 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) (stating that "a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary").

Where prudential standing is lacking, a party does not have standing to sue.

**B.      Enforcing a Settlement Agreement**

Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(a). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). The Supreme Court in *TMT Trailer Ferry,* 390 U.S. at 424–25, set forth factors for courts to consider when determining the appropriateness of a proposed settlement: (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with the litigation, and the attended expenses, inconvenience, and delay, and (c) the paramount interests of the estate's creditors.

### C.    Settlement Agreement Interpretation

Where the language of a release is clear and unambiguous, it must be enforced.  *In re WorldCom, Inc.*, 296 B.R. 115, 121 (Bankr. S.D.N.Y. 2003).  "[W]ords and phrases are given their plain meaning."  *Id.*  If a release in a contract is not clear, courts should look to context and intent of the parties.  "A release is a contract, and its construction is governed by contract law."  *Cardinal Holdings, Ltd. v. Indotronix Int'l Corp.*, 902 N.Y.S.2d 123 (App. Div. 2d Dep't 2010) (internal citation omitted).  "New York law considers the context as a key factor in interpreting a release.  Where the release presents a specific context, the released claims are interpreted in this light."  *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 71 (Bankr. S.D.N.Y. 2009) (internal citation omitted).  "[I]ts meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given."  *Clerico v. Pollack*, 48 N.Y.S.3d 738 (App. Div. 2d Dep't 2017) (internal citation omitted).

### D.    First-Filed Rule

"As a general rule, [w]here there are two competing lawsuits, the first suit should have priority."  *Emp'rs Ins. of Wausau v. Fox Enter. Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (internal citations omitted); *see also Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991).  The first-filed rule does not require that the parties or claims be identical, but it necessitates "substantial overlap" in factual and legal issues.  *See Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012).  The court in which the second-filed action was brought has the authority to stay or dismiss the action.  *See Adam*, 950 F.2d at 92 (finding that "[t]he decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion").

13

The presumption created by the first-filed rule can be overcome "where there is a showing of balance of convenience or special circumstances." *See Emp'rs Ins. of Wausau*, 522 F.3d at 274 (internal citation omitted). In analyzing the "balance of convenience" exception, courts consider factors that "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id*. at 275 (internal citations omitted). Further, courts must adjust their standard section 1404(a) analysis when a valid forum-selection clause is present. *See Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex*., 571 U.S. 49, 62–63 (2013). The relevant adjustments include that (i) the court not give weight to the plaintiff's choice of forum; (ii) the court not consider "parties' private-interests"; and (iii) the court not follow the choice-of-law rules of the original venue. *See id*. at 63–64.

### III.    DISCUSSION

#### A.  Staff Management Motion

As a threshold matter, the Court concludes that Staff Management does not have standing to enforce the settlement agreement. Here, Staff Management was not a party to the Settlement Agreement and the Settlement Agreement does not explicitly provide for the release of Noor's claims against Staff Management. This Court has held that "a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary of that contract lacks prudential standing to litigate issues related to that contract." *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018); *see also Deutsche Bank Nat'l Trust Co. v. F.D.I.C.,* 717 F.3d 189, 194 (D.C. Cir. 2013) ("Appellants lack prudential standing to enforce the terms of the Agreement because they were neither parties nor intended third-party beneficiaries to this contract."); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.,* 318 F. Supp. 2d 968, 977 (C.D. Cal. 2004) ("Pegasus is not a third-party beneficiary to the DBS Agreement.

14

Since Pegasus has not presented any other basis which would confer it standing to assert these claims, the prudential doctrine of standing precludes Pegasus' declaratory relief claims against DirecTV.").

Here, the terms of the Settlement Agreement protect the Trustee, the Debtors, their estates, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, members, associates, partners, subsidiaries, predecessors, successors, employees, attorneys, and agents. Staff Management argues that it is an "agent" or "associate" within the meaning of the Settlement Agreement's terms. However, as set forth in Noor's Opposition, Staff Management is not specifically mentioned in the Settlement Agreement. Additionally, there is no language in the Settlement Agreement suggesting that Staff Management was an agent or associate within the meaning of the Settlement Agreement. Because the Settlement Agreement does not unambiguously show that Staff Management was intended to be covered by the release, it does not have standing to enforce the Settlement Agreement. Because Staff Management was neither a party nor an intended beneficiary of the Settlement Agreement, it does not have prudential standing.

For similar reasons, even if Staff Management did have standing, Staff Management's Motion would be denied. Staff Management argues that the Settlement Agreement released Staff Management from claims by Noor because otherwise the intent of the Agreement—for all claims to be fully and finally resolved—could not be accomplished. (Staff Management's Motion ¶ 37.) However, Staff Management cited no case in which the court extended coverage of any release to a party (like Staff Management) who was not a party to the release and whose claims were not the same as those specifically released in the agreement.

The decision in *In re Actrade*, 424 B.R. 59 (Bankr. S.D.N.Y. 2009), is instructive. There, the bankruptcy court reviewed New York case law regarding releases. Even where the language in the relevant release stated that it covered "all claims against the Sureties," the bankruptcy court interpreted the release narrowly in light of several New York cases. *Id.* at 69. The bankruptcy court found that under New York law "a release, general on its face, will be limited to those claims within the contemplation of the parties at the time." *Id.* For example, the court considered a case in which a release given in a prior action relating to different claims released ConEd from liability with respect to shareholder claims under a merger agreement. "The court found it inconceivable that sophisticated parties informed by counsel would bargain away such a claim without any monetary consideration, and the terms of the release cannot reasonably be read to require such a result." *Id.* at 70 (internal citation omitted). The same is true here. As Noor correctly argues, there is no reason to expect that, in resolving the various claims between Noor and the Trustee asserted in the Noor Adversary Proceeding, Noor ever intended to walk away from its claims against Staff Management. (Noor's Opposition at 9.) The Settlement Agreement and release cannot reasonably be read to require such a result.

Lastly, while Noor's Opposition argues that Staff Management's Motion violates the first-filed rule, that rule does not bar Staff Management's Motion. The Noor Adversary Proceeding was filed prior to the Illinois Lawsuit. As such, this Court had possession of the action first. *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) ("Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first filed' rule whereby the court which first has possession of the action decides it."). Additionally, Noor's argument that this Court does not have jurisdiction because this is not a core proceeding under 28 U.S.C. § 157 lacks merit.

16

"Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders."  *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997).  Thus, this Court has jurisdiction to enforce a settlement agreement approved by this Court where the settlement agreement states the court "retain[s] jurisdiction to hear and determine any and all matters arising from the interpretation and/or implementation of this Order and the Settlement Agreement, including the exhibits thereto."  (Order Approving Settlement, Noor Adversary Proceeding, 16-01037-mg, ECF Doc. # 102.)  But the fact that the Court has jurisdiction to hear and determine disputes arising under the Settlement Agreement does not mean that Staff Management has standing to raise the issues it raises in the Staff Management Motion.

## IV.    CONCLUSION

For the reasons explained above, Staff Management's Motion is **DENIED**.


Dated:    October 10, 2019
          New York, New York


                                    *Martin Glenn*
                                   MARTIN GLENN
                              United States Bankruptcy Judge

17